UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRITTANY WEBSTER,

               Plaintiff,                  Case No. 18-cv-11686

                                                  District Judge Paul D. Borman

v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 10), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 11) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (DE 10), **GRANT** Defendant's motion for summary judgment

(DE 11), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

        Plaintiff, Brittany Webster, brings this action under 42 U.S.C. §§ 405(g), 42

U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for Supplemental Security

Income (SSI) benefits.  This matter is before the United States Magistrate Judge

for a Report and Recommendation on Plaintiff's motion for summary judgment or remand (DE 10), the Commissioner's cross-motion for summary judgment (DE 11), and the administrative record (DE 8).

### A.    Background and Administrative History

In her August 28, 2015 application, Plaintiff alleges her disability began on April 1, 2009, at the age of 19.  (R. at 181, 203.)[1]  In her disability report, she lists several conditions (*e.g.*, blood clot disorders, 3 slipped discs in the lumbar spine, May-Thurner Syndrome, Thoracic Outlet Syndrome, sterility, anxiety, depression, difficulty ambulating, Antiphospholipid Antibody Syndrome, Non-Huntington's Chorea, Neurocardiogenic Syncope, sleep apnea, chronic abdominal pain, Coumadin skin necrosis, heparin-induced thrombocytopenia) as limiting her ability to work.  (R. at 207.)  Her application was denied on February 17, 2016.  (R. at 87-102.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 124.)  On July 3, 2017, ALJ Patricia Carey held a hearing, at which Plaintiff and a vocational expert (VE), Charles H. McBee, testified.  (R. at 32-86; *see also* R. at

---

[1] Plaintiff previously filed an application on October 5, 2009, and it appears to have been denied at the initial level on July 15, 2010.  (R. at 11, 88.)  At the July 3, 2017 administrative hearing, Plaintiff testified that her alleged onset date is the date she "had to go in for gall bladder surgery and the doctor told [her] that [she'll] never be able to work[,]" allegedly because she had "a clot from [her] vena cava all the way down to [her] left leg."  (R. at 44-45.)

2

254-256.)  On December 28, 2017, ALJ Carey issued an opinion, which

determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 8-31.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at

178-180.)  However, on April 19, 2018, the Appeals Council denied Plaintiff's

request for review.  (R. at 1-5.)  Thus, ALJ Carey's decision became the

Commissioner's final decision.

Plaintiff timely commenced the instant action on May 30, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 1,423 pages of medical

records, which were available to the ALJ at the time of her December 28, 2017

decision.  (R. at 29-31, 267-1689 [Exhibits 1F-20F].)  These materials will be

discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since October 28, 2015, the application date.  (R. at 13.)

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

May-Thurner syndrome; thoracic outlet syndrome; obstructive sleep apnea (OSA);

lumbar spine degenerative disc disease (DDD); deep vein thrombosis (DVT);

neurocardiogenic syncope; hypercoaguable state; anxiety; and depression. (*Id*. at

13-14.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments. (*Id*. at 14-17.) **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and

determined that Plaintiff had the RFC:

> . . . to perform sedentary work . . . [*i.e., exertional limitations*][,]
> except she can occasionally climb ramps and stairs, never climb
> ladders ropes or scaffolds, and can occasionally balance, stoop, kneel,
> crouch, and crawl [*i.e., postural limitations*]. She can occasionally
> reach overhead with the right upper extremity, and can frequently
> handle, finger and feel with the right upper extremity [*i.e.,
> manipulative limitations*]. She can never work around hazards, such
> as unprotected heights or moving dangerous mechanical parts, [and]
> she can occasionally operate a motor vehicle [*i.e., environmental
> limitations*]. She is also limited to performing simple, routine and
> repetitive tasks, but not at a production rate pace, for example, no
> assembly line work. She is limited to occasional interaction with
> supervisors, coworkers, and the general public [*i.e., mental health
> limitations*]. She can elevate her left leg six inches at the workstation
> and she is to be able to use a walker or a wheelchair to ambulate to the
> workstation.

(*Id*. at 17-24.) At **Step 4**, the ALJ determined that Plaintiff has no past relevant

work. (*Id*. at 24.) At **Step 5**, considering Plaintiff's age, education, work

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

experience, and RFC, the ALJ determined that there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform, such as

address clerk, document preparer, and surveillance monitor. (*Id*. at 24-25.) The

ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

the Social Security Act, since October 28, 2015, the date the application was filed.

(*Id*. at 25.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)). In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that the ALJ "failed to obtain an *expert medical opinion*

regarding *medical equivalency* of Listing 7.18[.]" (DE 10 at 11-15 (emphases

added).)  The Commissioner contends that "[s]ubstantial evidence supports the

ALJ's finding that Plaintiff's impairments did not medically equal Listing 7.18."

(DE 11 at 9-22.)

> ### 1.     Listing 7.18 concerns repeated complications of hematological disorders.

The SSA Listings set forth categories of hematological disorders, including:

(**1**) Listing 7.05 (*Hemolytic anemias*); (**2**) Listing 7.08 (*Disorders of thrombosis*

*and hemostasis*); (**3**) Listing 7.10 (*Disorders of bone marrow failure,*); (**4**) Listing

7.17 (*Hematological disorders treated by bone marrow or stem cell*

*transplantation*); and, (**5**) Listing 7.18 (*Repeated complications of hematological*

*disorders*).  Listing 7.18 includes:

> . . . those complications listed in 7.05, 7.08, and 7.10 but without the
> requisite findings for those listings, or other complications (for
> example, anemia, osteonecrosis, retinopathy, skin ulcers, silent central
> nervous system infarction, cognitive or other mental limitation, or
> limitation of joint movement), resulting in significant, documented
> symptoms or signs (for example, pain, severe fatigue, malaise, fever,
> night sweats, headaches, joint or muscle swelling, or shortness of
> breath), and one of the following at the marked level (see 7.00G4)
>
> > A.     Limitation of activities of daily living (see 7.00G5).
> >
> > B.     Limitation in maintaining social functioning
> > (see 7.00G6).
> >
> > C.     Limitation in completing tasks in a timely manner due to
> > deficiencies in concentration, persistence, or pace [CPP]
> > (see 7.00G7).

*See* https://www.ssa.gov/disability/professionals/bluebook/7.00-

HematologicalDisorders-Adult.htm#7_18 (last visited June 28, 2019).

## 2.    The ALJ found that Listing 7.18 was not met.

While Listing 7.18 is not among those expressly considered within the

February 17, 2016 disability determination, Listing 4.11 (Chronic Venous

Insufficiency) was considered.  (R. at 93-94.)  State agency consultant Twaide

Langham, D.O. opined that "[t]he medical evidence in file does not establish a

condition that meets or equals a listing."  (R. at 97.)  During the July 3, 2017

administrative hearing, Plaintiff's counsel argued that Plaintiff met Listing 7.18.

(R. at 39.)

Nonetheless, at Step 3 of the sequential process, the ALJ determined that

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.  (R. at 14-17.)  In

so doing, the ALJ determined that Listing 4.11 was not met, as Plaintiff had not

"had recurrent or persistent ulceration, or extensive brawny edema involving at

least two-thirds of the leg between the ankle and knee or the distal one-third of the

lower extremity between the ankle and hip."  (R. at 15.)  The ALJ also specifically

determined that Listing 7.18 was not met, as:

> . . . *the claimant has not had repeated complications as required*
> *under 7.00(G)(2),* averaging three times per year and each lasting two
> weeks or more.  Furthermore, *she does not have a marked limitation*
> *of her activities of daily living, social functions, or completing tasks in*

> *a timely manner due to deficiencies in [CPP].* As discussed below,
> the claimant has moderate limitations interacting with others and mild
> limitations in her concentration. The claimant's activities of daily
> living are not markedly impaired as the claimant is able to watch her
> minor child, and treatment records noted that she was able to drive
> herself to her mental health appointments.

(*Id*. (emphasis added).) In support of this statement, the ALJ provided express

citations to the May 18, 2017 and July 13, 2017 notes of Alamdar Kazml, M.D.,

each of which acknowledges that "the patient arrived to her appointment before her

appointment time by driving herself." (R. at 1065, 1067.) Moreover, within her

Function Report, Plaintiff noted that she takes care of her daughter by doing "basic

small things[,]" such as "simple snacks[,] drinks, read[ing] to her[.]" (R. at 228;

*see also* R. at 41.) Ultimately, the ALJ concluded that "the medical evidence did

not demonstrate the claimant's impairments rose to the level of listing level

severity, and that no acceptable medical source had mentioned findings *equivalent*

*in severity* to the criteria of any listed impairment, individually or in combination."

(R. at 17 (emphasis added).)

### 3.   Plaintiff's argument invokes Social Security Ruling (SSR) 17-2p.

Plaintiff argues that the ALJ errantly failed "to obtain an *expert medical*

*opinion* regarding *medical equivalency* as required by SSR 17-2p." (DE 10 at 11

(emphases added).) SSR 17-2p concerns "evidence needed by adjudicators *at the*

*hearings and appeals council levels* of the administrative review process to make

findings about medical equivalence." SSR 17-2P (S.S.A. Mar. 27, 2017) (emphasis added).

More specifically, Plaintiff argues that "the record must contain a prior administrative medical finding from a MC [medical consultant] or PC [psychological consultant] or ME [medical expert] evidence." (DE 10 at 15.) To be sure, the SSA requires "adjudicators *at the initial and reconsideration levels* to obtain MC or PC administrative medical findings about medical equivalence." SSR 17-2p, 2017 WL 3928306, *3 (emphasis added). In fact, the February 17, 2016 disability determination explanation is stamped by two state agency consultants – Twaide Langham, D.O. and Jennifer Swain, Psy.D. (R. at 93-94, 97, 99, 101.) More importantly, even if Listing 7.18 was not among those expressly listed by the state agency consultants, Dr. Langham's February 17, 2016 opinion concluded that "the medical evidence in file does not establish a condition that meets or equals a listing." (R. at 93-94, 97.) Thus, the Undersigned disagrees that "there is no medical opinion regarding medical equivalency for Listing 7.18 from any physician whatsoever," and that "the ALJ did not rely upon the opinion of a physician in reaching h[er] conclusions regarding medical equivalency." (DE 10 at 14-15.)

Nor is the Undersigned convinced that the ALJ in this case "was required to obtain an expert opinion regarding medical equivalency for Listings 7.18[.]" (DE

10 at 15.)  In contesting the decision of ALJ Carey, *i.e.*, an adjudicator *at the hearing level*, Plaintiff relies on a portion of SSR 17-2p which concerns evidentiary requirements and states:

> The adjudicator must base his or her decision about whether the individual's impairment(s) medically equals a listing on the *preponderance of the evidence* in the record.  To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
>
> 1.  A prior administrative medical finding from an MC or PC from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> 2.  ME evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
>
> 3.  A report from the AC's medical support staff supporting the medical equivalence finding.

SSR 17-2p, 2017 WL 3928306, *3 (emphasis added).  (DE 10 at 11, 15.)

However, this same section of the ruling states:  "If an adjudicator *at the hearings or AC level* believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, *we do not require the adjudicator to obtain ME evidence or medical support staff input* prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment."  SSR 17-2p, 2017 WL 3928306, *4 (emphases added).  In Plaintiff's case, ALJ Carey expressly concluded that "no acceptable medical

source had mentioned findings *equivalent in severity* to the criteria of any listed

impairment, individually or in combination[,]" (R. at 17 (emphasis added)).

Therefore, SSR 17-2p did not require ALJ Carey to obtain an expert opinion

regarding medical equivalency for Listing 7.18.  Plaintiff's arguments that the

medical evidence and testimony "raise[] the question of medical equivalency of

Listing 7.18," or that the record evidence "could reasonably be interpreted to be

equivalent to that Listing[,]" (DE 10 at 15), are unavailing for the reasons set forth

below.

> **4.   Substantively, Plaintiff argues that she meets or medically equals Listing 7.18.**

> **a.   Listing 7.00(G)(2) (Repeated Complications)**

Plaintiff argues that she has had "repeated complications," seemingly of her

DVT and May-Thurner Syndrome.  (DE 10 at 12-14.)[3]  "Repeated complications

means that the complications occur on an average of three times a year, or once

every 4 months, each lasting 2 weeks or more; or the complications do not last for

2 weeks but occur substantially more frequently than three times in a year or once

every 4 months; or they occur less frequently than an average of three times a year

---

[3] "May-Thurner syndrome is a rarely diagnosed condition in which patients develop iliofemoral deep venous thrombosis (DVT) due to an anatomical variant in which the right common iliac artery overlies and compresses the left common iliac vein against the lumbar spine." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3377287/ (last visited July 1, 2019).

or once every 4 months but last substantially longer than 2 weeks. . . ."  Listing

7.00(G)(2), www.ssa.gov.

Plaintiff quotes Listings 7.18 and 7.00(G)(2), after which she cites several

medical records in support of her claim that she has been diagnosed with DVT and

May-Thurner syndrome and has had "repeated complications[,]" such as . . .

- A February 22, 2013 hospital admission for right upper extremity DVT, for which she was discharged on March 1, 2013 (R. at 1140-1141)

- An April 28, 2014 upper extremity venous exam, which revealed compressible veins, which occurred on the same day as a single-day hospital outpatient visit.  (R. at 311, 340-342.)

- An April 30, 2014 - May 4, 2014 hospital admission, with discharge diagnoses including DVT (R. at 351)

- August 2014 records from the Mayo Clinic (R. at 907-928), including an August 6, 2014 office visit with diagnoses including May-Thurner Syndrome (R. at 921-922) and an August 13, 2014 office visit with diagnoses including right axillary vein thrombosis (R. at 916)

- An August 18, 2015 to August 24, 2015 hospital admission, during which time:  **(i)** the admitting impression was DVT (R. at 432); **(ii)** an August 19, 2015 VL Lower Extremity Bilateral Venous Duplex revealed chronic deep vein thrombosis of the left leg (R. at 320); and, **(iii)** the discharge diagnoses included DVT (R. at 436).

- A January 12, 2016 consultative examination report of Tanvir Qureshi, M.D., who rated Plaintiff's ambulation with slow shuffling, lurching, and unpredictable gait (R. at 939)

- A January 14, 2016 consultative examination report of Gayle Oliver-Brannon, Ph.D., L.P., which reflects Plaintiff's utilization of "a wheelchair and walker to ambulate due to her clotting disorders." (R. at 951.)

(DE 10 at 12-14.) Even acknowledging that these records include three hospital admissions, Plaintiff's above-described citations to treatment records over the 18 month period between February 22, 2013 to August 24, 2015 do not show how the complications "occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more;" *or* "do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months;" *or* "occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks." Listing 7.00(G)(2). Plaintiff states that she "has been diagnosed with deep venous thrombosis and Mary-Turner syndrome and has had repeated complications." (DE 10 at 13.) Maybe so; however, she does not meet the criteria for "repeated complications," as defined in Listing 700(G)(2). Thus, Plaintiff has not shown error in that regard.[4]

As for Plaintiff's citations to the consultative examinations, the ALJ assigned "little weight" to Dr. Quereshi's opinion and "partial weight" to Dr.

---

[4] In fact, within the RFC discussion, the ALJ concluded that "the medical evidence supports the presence of DVT as well as clotting issues[,]" for which she provided myriad record citations spanning the period from February 22, 2013 to November 11, 2016. (R. at 18, 311, 312, 346, 351, 373, 377, 1140; R. at 19, 320, 430, 436, 493, 495, 910, 911, 913, 914, 923-926, 1025, 1027; *see also* DE 11 at 15, 21-22.)

Oliver-Brannon's opinion.  (R. at 23.)  Plaintiff does not challenge the ALJ's

treatment of the opinion evidence.  As such, Plaintiff has not satisfied her burden

to overturn ALJ Carey's treatment of the opinion evidence.  *Hollon ex rel. Hollon*

*v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we limit our

consideration to the particular points that Hollon appears to raise in her brief on

appeal.").

   **b.     Listing 7.00(G)(5) (Limitation of Activities of Daily Living)[5]**

   While the ALJ found that Plaintiff did not have "a marked limitation of her

[ADLs]," Plaintiff argues that she "has a marked limitation in performing activities

of daily living."  (R. at 15, DE 10 at 14.)  "<u>Marked</u> limitation means that the

symptoms and signs of your hematological disorder interfere <u>seriously</u> with your

ability to function."  Listing 7.00(G)(4) (emphasis in original).  Activities of daily

living "include, but are not limited to,

> . . . such activities as doing household chores, grooming and hygiene,
> using a post office, taking public transportation, or paying bills.  We
> will find that you have a 'marked' limitation in activities of daily
> living if you have a serious limitation in your ability to maintain a
> household or take public transportation because of symptoms such as
> pain, severe fatigue, anxiety, or difficulty concentrating, caused by
> your hematological disorder (including complications of the disorder)

---

[5] As previously noted, the ALJ expressly found that Plaintiff did not have "a
marked limitation of her [ADLs], social functions, or completing tasks in a timely
manner due to deficiencies in [CPP]."  (R. at 15.)  Plaintiff does not seem to
dispute the ALJ's conclusions as to social functioning (*i.e.*, Listing 7.00(G)(6)) or
completing tasks in a timely manner (*i.e.*, Listing 7.00(G)(7)).

or its treatment, even if you are able to perform some self-care
activities.

Listing 7.00(G)(5), www.ssa.gov.

In support of her statement that "[t]he record contains ample evidence that
the Plaintiff has a marked limitation in performing activities of daily living[,]"
Plaintiff cites her function report and the hearing transcript, *inter alia*, her
testimony that she does not drive.  (DE 10 at 14, R. at 228-229, 53, 42.)  In
response, the Commissioner points to:  **(i)** the ALJ's listing discussion, including
the citation of Dr. Kazmi's May and July 2017 records, each of which note that
Plaintiff drove herself to those appointments (R. at 15, 1065, 1067); and, **(ii)**
August 20, 2015 occupational therapy notes, which indicate that Plaintiff was
largely independent with her ADLs and upon which state agency consultant Dr.
Langham seems to have relied (R. at 96, 554).  (DE 11 at 15-16.)  Thus, the ALJ's
finding as to ADL is supported by substantial evidence.

More to the point, within the RFC determination, ALJ Carey specifically
concluded that Plaintiff's "statements about the intensity, persistence, and limiting
effects of her symptoms . . . [were] inconsistent because they [we]re not supported
by the medical evidence in the file."  (R. at 21; *see also* DE 11 at 16-17.)  The ALJ
went on to provide a two paragraph litany of inconsistencies between Plaintiff's
version of her own limitations and the evidence contained in her medical records.
(R. at 21.)  The ALJ accordingly found her to be less than credible.  (*Id*.)  As the

Commissioner correctly notes, Plaintiff's instant appeal does not challenge the ALJ's credibility finding.  (DE 11 at 20, 22.)  *See also* 20 C.F.R. §§ 404.1529, 416.929 ("How we evaluate symptoms, including pain.") (effective June 13, 2011 to Mar. 26, 2017).  As such, Plaintiff has not satisfied her burden to overturn ALJ Carey's conclusion that Plaintiff is not markedly limited in her ADLs, *i.e.*, the Listing 7.00(G)(5) determination.  *Hollon*, 447 F.3d at 491.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Substantial evidence supports the ALJ's ADL finding, and Plaintiff has not shown legal error that would upend the  decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 11), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 16, 2019                           s/*Anthony P. Patti*
                                                Anthony P. Patti
                                                UNITED STATES MAGISTRATE JUDGE